#23942-rev&rem-PER CURIAM
**2006 SD 104**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

JERROLD RAY MARTIN,                       Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
CUSTER COUNTY, SOUTH DAKOTA

* * * *

HONORABLE MERTON B. TICE, Jr.
Judge

* * * *

LAWRENCE E. LONG
Attorney General

CRAIG M. EICHSTADT
Deputy Attorney General        Attorneys for plaintiff
Pierre, South Dakota         and appellee.

CHRIS BEESLEY of
Beesley Law Office           Attorneys for defendant
Custer, South Dakota       and appellant.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 2, 2006

OPINION FILED 11/21/06

#23942

PER CURIAM

[¶1.]     Jerrold Ray Martin appeals a restitution order entered following his guilty plea to intentional damage to property.  Martin contends the trial court erred as a matter of law in calculating the amount of restitution.  We reverse and remand.

## FACTS

[¶2.]     On December 24, 2004, Martin illegally entered the home of Michael and Paula Kear in Buffalo Gap, South Dakota.  Martin destroyed a large amount of their personal property.  Martin pleaded guilty to intentional damage to property as a result of this incident.  Following the guilty plea, a restitution hearing was held.

[¶3.]     The dispute involved the value of the damaged property.  The parties agreed on the value of a number of items totaling approximately $470.  The remaining items in dispute included a computer, gun cabinet, oriental rug, bookcases, books, aquarium, three antique lamps, lead crystal candy dishes, a curio cabinet, guns and a sofa.  Martin offered estimates from an auctioneer that the remaining property would bring between $1680 and $3975 at auction.  On the other hand, Michael and Paula Kear testified that the replacement value of the remaining property ranged between $8070 and $8250.  The Kears' valuation was based on a combination of estimates received and actual purchase prices.[1]

---

1.    An owner of property is also competent to testify to its value.  Shaffer v. Honeywell, Inc., 249 NW2d 251, 258 n8 (SD 1976) (citations omitted) (overruled on other grounds).

-1-

Including the undisputed items, the range of values presented to the trial court was approximately $2150 - $8720.

[¶4.]     The trial court ordered $8,552.58 in restitution. Martin appeals the restitution order arguing that the trial court inappropriately awarded the full replacement value of the property destroyed without considering depreciation or fair market value.

## ANALYSIS

[¶5.]     "At a restitution hearing, the defendant is entitled to confront witnesses against him, but the rules of evidence and civil burden of proof do not apply." State v. Ruttman, 1999 SD 112, ¶3, 598 NW2d 910, 911 (citing State v. Tuttle, 460 NW2d 157, 159 (SD 1990)). Therefore, the "reasonably satisfied" standard of proof applies in determining restitution. *Tuttle*, 460 NW2d at 160. Furthermore, a trial court has broad discretion in imposing restitution. State v. Thayer, 2006 SD 40, ¶16, 713 NW2d 608, 613. However, questions of law are reviewed under a de novo standard with no deference given to the trial court's conclusions. City of Deadwood v. Summit, Inc., 2000 SD 29, ¶9, 607 NW2d 22, 25 (citations omitted).

[¶6.]     SDCL ch 23A-28 governs restitution in criminal cases. SDCL 23A-28-1 declares "[i]t is the policy of this state that restitution shall be made by each violator of the criminal laws to the victims of the violator's criminal activities to the extent that the violator is reasonably able to do so." "Restitution" is defined as the "full or partial payment of pecuniary damages to a victim." SDCL 23A-28-2(4). Significantly, "pecuniary damages" are defined as "all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event,

except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium." SDCL 23A-28-2(3). Therefore, the civil measure of damages applies.

[¶7.]    At the restitution hearing, the parties disagreed whether restitution should be based upon full replacement value, whether depreciation should be considered, and whether restitution should be limited to the fair market value of the property destroyed. The trial court ultimately ruled:

> If it was a civil case, I would take fair market value. I
> think I would have to take fair market value. Under the
> circumstances of a criminal offense, and the fact that
> people have lost their property that was personal to them,
> unless you can show me authority that says I cannot
> consider replacement value, I would intend to proceed on
> replacement value because of the nature of the request.

The trial court thereafter rendered its decision without entering findings of fact and conclusions of law.

[¶8.]    Because we have no findings of fact and conclusions of law, we are unable to determine the trial court's precise measure of damages. *See Tuttle*, 460 NW2d at 159 ("it is appropriate that the trial court enter written findings of fact in support of any order of restitution"). However, it appears from the amount of restitution awarded, that replacement value was primarily utilized without regard to depreciation. Moreover, it is clear from the trial court's oral pronouncement that it rejected the "civil" measure of damages. Because the civil measure of damages is expressly incorporated in the restitution statutes, the trial court erred as a matter of law in rejecting that measure out of hand. *See* SDCL 23A-28-2(3).

[¶9.]    Our discussion of the appropriate measure of damages must begin with the statutes governing the civil measure of damages for the destruction of

personal property. SDCL 21-1-6 generally requires a consideration of market value

in assessing such damages. That statute provides:

> In estimating the damage to property, except in the cases prescribed in §§ 21-1-8 and 21-1-9, the value of such property to the owner is deemed to be its market value at the time and in the market nearest to the place where it was located at the time of the damage.[2]

However, the peculiar value of an item to a person may be considered in

recovering damages against a willful wrongdoer. SDCL 21-1-8 provides:

> Where certain property has *a peculiar value to a person* recovering damages for a deprivation thereof, or injury thereto, that may be deemed to be its value against one who had notice thereof before incurring a liability to

---

2. "Market value" or "fair market value" has been extensively discussed. In assessing a damage to personal property claim, this Court has stated that the proper measure of damages is the fair market value of the property. Moore v. Kluthe & Lane Ins. Agency, Inc., 89 SD 419, 432-33, 234 NW2d 260, 267-68 (1975). In arriving at this value "the jury has a right to consider [the items] then depreciated value." *Id.* at 267 n6. We have also recognized that original cost or replacement cost adjusted by depreciation is a measure to consider when the property can be valued in the second-hand market:

> There can be no doubt that second-hand market value is not adequate compensation for a person who suffers the destruction of his personal property. Likewise, to permit full replacement value would be to allow more than the actual value of the goods destroyed. We find that the trial court reached a reasonable measure of damages in utilizing original cost or replacement cost adjusted by a percentage for depreciation varying with age and condition of the property.

*Shaffer*, 249 NW2d at 258 (citations omitted).

Commentators and pattern jury instructions generally conclude that the measure of damages for the destruction of property is its reasonable value at the time of the loss. 25 CJS *Damages* § 131 (2002); Restatement (Second) of Torts § 927 (1979). *See also* SD Pattern Jury Instruction, 30-15 (2001); California Civil Jury Instructions, (BAJI) 14.20 (2006); Illinois Pattern Jury Instruction- Civil 30.15 (2006); Ronald W. Eades, *Jury Instructions on Damages in Tort Actions* §10.01 (5th ed 2006).

> damages in respect thereof, or *against a willful*
> *wrongdoer*.

(emphasis added).

[¶10.]    Commentators have recognized an exception similar to SDCL 21-1-8 in

valuing a loss, injury or conversion of household goods:

> Clothing and household goods are capable of being valued,
> since secondhand goods of this nature are regularly
> bought and sold, but it has been argued that such goods
> are personal, and awarding secondhand market value is
> not adequate compensation to the owner.  In these cases,
> courts do not limit damages to secondhand market value,
> but allow the owner to recover either the actual value of
> the item or its value to the owner, excluding any fanciful
> or sentimental value which the owner may place on the
> item.

22 AmJur2d *Damages* § 292 (2006).  *See also* Eades, *Jury Instructions on Damages*

*in Tort Actions*, § 10.09 (household goods, clothing and personal effects).  In valuing

such property:

> The courts faced with the problem have almost
> universally agreed that the owner of such property suing
> in tort for its loss, injury or conversion is not limited to
> the value of similar goods on the secondhand market, but
> may recover their actual value to him.  This rule has been
> justified on the ground that the market for secondhand
> goods of this type does not actually reflect the economic
> value of the goods to the owner, since most people in this
> position will not in fact go into the secondhand market for
> replacements, but will be 'forced' to purchase new goods.
>
> The courts in these cases have emphasized that it is the
> actual, economic value to the owner which is to be
> substituted for the normal market value test, and that no
> allowance is to be made for merely sentimental or fanciful
> value.
>
> In determining the actual value to the owner, the courts
> have been liberal in admitting evidence of any
> circumstance which could be reasonably relevant to the
> question.  Pre-eminent, however, have been the elements

of original cost, as reduced by depreciation. Such depreciation is to be determined in the light of the length and type of use the property has had, together with direct evidence of its condition at the time of the loss.

The courts have also sometimes referred to replacement cost as a factor to be considered. It is not clear whether such replacement cost refers to market value of similar goods on the secondhand market (although it seems that this price would be a relevant, although not controlling, factor) or to the cost, at the time of loss, of new goods of a similar type and quality. In the latter event, of course, this replacement figure would have to be reduced by a factor representing depreciation the original goods had suffered.

Brendan O'Byrne, Annotation, *Valuation of Wearing Apparel or Household Goods Kept by Owner for Personal Use, in Action for Loss or Conversion of, or Injury to, Such Property*, 34 ALR3d 816 § 2[a] (2006) (internal citations omitted). *See also* R.B. Bewley v. Allright Carpark, Inc., 617 SW2d 547, 550 (MissApp 1981); Keefe v. Bekins Van & Storage Co., 540 P2d 1132, 1135-36 (ColoApp 1975) (discussing damages for household goods, wearing apparel and personal effects).

[¶11.] This rationale extends beyond secondary authority and is consistently embraced by courts considering restitution in criminal cases. For example, the North Dakota Supreme Court, in adjudicating a similar restitution dispute, stated:

While diminution in value remains one of the measures of damages, there are situations where replacement costs will be needed to make a criminal victim whole or, stated differently, to reimburse a victim for reasonable expenses 'actually incurred.' For example, if a person has owned a set of dishes for the previous decade, the fair market value of this item would be very small. However, a victim who has these dishes destroyed will have little choice but to procure replacement dishes, which are presumably not readily, or desirably, found in a secondary market. The same can be said of many personal items, such as clothing or certain home furnishings like sofas, mattresses, or bed sheets.

#23942

State v. Tupa, 691 NW2d 579, 583 (ND 2005).[3]  This analysis was also followed by

the Third Circuit Court of Appeals:

> Although fair market value will often be an accurate measure of the value of property, it will not always be so. Where actual cash value is difficult to ascertain- because an item is unique, or because there is not a broad and active market for it- replacement cost may be a better measure of value.
>
> While there is no indication that the destroyed furniture in this case was 'unique,' furniture often has a personal value to its owners that cannot be captured or accurately estimated by simply determining the market value of the furniture.  Replacing the armchair one sits upon each evening or the bed one sleeps in each night with furniture that others have already used may be difficult to accept. This would be necessary, however, if the household furniture is replaced at its market value because damaged furniture cannot be replaced at market value with equivalent new items.  For that reason, when evaluating personal items of furniture in one's residence, we find that replacement value may be an appropriate measure of 'value'. . . .

United States v. Simmonds, 235 F3d 826, 832 (3d Cir 2000).

[¶12.]        However, as the North Dakota Supreme Court recognized, in some

situations "replacement costs will be excessive and diminution in fair market value

or repair costs will be in order."  *Tupa*, 691 NW2d at 583.  As a result, courts will

---

3.      While the restitution schemes vary in each state, the North Dakota Supreme Court noted this holding was consistent with "the spectrum of approaches taken by other states confronted with the issue of calculating criminal restitution."  *Tupa*, 691 NW2d at 583.

"refrain from constraining a trial judge's discretion with any universal pronouncement on how to properly arrive at reasonable restitution." *Id.* "Rather, the factual situation at hand must be examined to determine whether the trial judge acted according to reason." *Id. See* State v. Chambers, 138 P3d 405, 415 (KanApp 2006) (holding because there was no readily ascertainable market for used lingerie, consideration of replacement value was not an abuse of discretion in determining restitution).

[¶13.]    These principles apply to our statute which permits recovery of "peculiar value to a person." However, we are hampered by the lack of findings of fact and conclusions of law, and the trial court's assumption that the civil measure of damages did not apply. Moreover, even considering "peculiar value" under SDCL 21-1-8 and the foregoing authorities, replacement cost may be adopted, but not without any consideration of depreciation (or perhaps appreciation in the case of a second-hand item that has become a valuable antique). Because it appears that replacement or original cost was considered without regard to any other factors, we reverse and remand for reconsideration and the entry of findings of fact and conclusions of law.

[¶14.]    Reversed and remanded.

[¶15.]    GILBERTSON, Chief Justice, SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.