#25124-a-SLZ

**2009 SD 94**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF
M.D.D.,
A DELINQUENT CHILD

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE VINCENT A. FOLEY
Judge

* * * *

MARTY J. JACKLEY
Attorney General

FRANK GEAGHAN
Assistant Attorney General                    Attorneys for appellee,
Pierre, South Dakota                          State of South Dakota.

DAVID K. WHEELER of
Morgan, Theeler, LLP                          Attorneys for appellant,
Huron, South Dakota                           M.D.D.

* * * *

ARGUED ON AUGUST 25, 2009

OPINION FILED **10/28/09**

#25124

ZINTER, Justice

[¶1.]        M.D.D. admitted the allegations of a juvenile delinquency petition alleging simple assault and resulting injury of another person.  The circuit court placed M.D.D. on probation and ordered her to pay restitution for the medical expenses Medicaid was required to pay for the treatment of the injured person. M.D.D. appeals the order of restitution. We affirm.

*Facts and Procedural History*

[¶2.]        M.D.D. injured another person while driving a car.  As a result of this incident, the injured person required medical care.  The medical expenses were paid by Medicaid.  In a juvenile proceeding arising from the incident, M.D.D. admitted to a juvenile delinquency petition alleging that her conduct constituted simple assault. She was placed on probation for 120 days.  At a restitution hearing, the State requested that Medicaid be reimbursed for the medical expenses it was required to pay for the victim's injuries .  M.D.D. argued that, in juvenile proceedings, the applicable statutes did not authorize restitution for third-party medical expense payers like Medicaid.  The circuit court disagreed and ordered M.D.D. to pay restitution to Medicaid.

*Decision*

[¶3.]        On appeal, M.D.D. argues that Medicaid, a third-party payor legally obligated to pay the medical expenses, is not entitled to restitution under either SDCL ch. 23A-28 (restitution in criminal cases) or SDCL 26-8C-7(1) and 26-8B-6(4) (restitution in juvenile delinquency cases).  Statutory interpretation is a question of law we review *de novo*.  State v. Wilson, 2008 SD 13, ¶14, 745 NW2d 666, 670.

[¶4.] SDCL ch. 23A-28 authorizes an award of restitution to specified "victims" in criminal cases. The definition of victim in SDCL 23A-28-2(5) includes third-party payors.[1] The State suggests that we interpret this statute to apply in juvenile proceedings. We note, however, that under this criminal statute, the person seeking restitution must be a victim of "criminal activities" of a "defendant." Further, "criminal activities" only include "crime[s]" for which there is a "plea of guilty or verdict of guilty upon which a judgment of conviction may be rendered." SDCL 23A-28-2(2). Although these terms apply in criminal cases involving adults, none of them have application in juvenile proceedings.

[¶5.] In juvenile proceedings there are no criminal activities, crimes, pleas of guilty, verdicts of guilty, or defendants. Instead, an alleged "delinquent child" may be subject to an "adjudication and disposition" and can only admit or deny a juvenile petition. *See* SDCL 26-7A-43. Plainly, the different language used in the criminal restitution statutes does not reflect legislative intent that the criminal statutes

---

1. SDCL 23A-28-2(5) defines a "victim" as:

> Any person, as defined in subdivision 22-1-2(31), who has suffered pecuniary damages as a result of the defendant's criminal activities, including any person who has by contract or by statute undertaken to indemnify another or to pay or provide a specified or determinable amount or benefit upon determinable contingencies. Any victim who has suffered pecuniary damages has priority of claim as opposed to any person who has a claim to indemnity or subrogation as a result of the same defendant's criminal activity.

(SDCL ch 23A-28) apply to restitution in juvenile proceedings under SDCL chs 26-8B and 26-8C.[2]

[¶6.]     Therefore, the question is whether a delinquent child, as a part of a juvenile disposition, may be ordered to pay the restitution under the juvenile statutes.  Unlike the criminal restitution statute that limits restitution to a defined group of "victims," SDCL 26-8B-6(4)[3] broadly authorizes the court to order restitution in juvenile cases without language limiting or restricting the type of person or entity that may be reimbursed.  The statute simply authorizes restitution for "*any damage* done to property or for medical expenses."  *Id.* (emphasis added).  In light of this broad, unqualified language, we conclude that the Legislature did not intend to limit restitution to any particular class of persons or entities that paid medical expenses as a result of the juvenile's delinquent behavior.  Absent limiting language, we hold that the statute authorizes restitution to a third-party payor like

---

2.     We acknowledge the point that SDCL 23A-28-14, a criminal statute, refers to "victim[s] of any act of juvenile delinquency."  This statute, however, only allows certain "victims" of juvenile misconduct to receive the name and address of the juvenile.  There is nothing in the statute authorizing restitution for the "victims" referenced in that statute.  We conclude that this statute has no application in juvenile proceedings under Title 26, other than to authorize the release of certain juvenile information.

3.     SDCL 26-8C-7 prescribes the available dispositions in juvenile delinquency cases, and subsection (1) of that statute authorizes the dispositions allowed in 26-8B-6(4), which provides:

>    The court may require the child to pay for any damage done to property or for medical expenses under conditions set by the court if payment can be enforced without serious hardship or injustice to the child[.]

Medicaid, who was legally required to pay medical expenses for damages caused by the juvenile's misconduct.

[¶7.] M.D.D.'s reliance on *State v. Fryer*, 496 NW2d 54 (SD 1993) (superseded by statute as stated in State v. Galligo, 1996 SD 83, 551 NW2d 303), is misplaced. In that case, the Legislature chose to limit restitution to "victim[s]" in criminal cases, but the Legislature did not define that term. In interpreting the word "victim," this Court recognized the distinction between direct victims of criminal offenses and indirect victims, such as insurance companies. *Id.* at 55. That distinction is, however, inapplicable here because the word "victim" is not used in the juvenile restitution statute. As previously explained, unlike the criminal statute, the juvenile statute does not limit restitution to "victims." Therefore, *Fryer's* interpretive analysis of the word "victim" is inapposite in a juvenile proceeding.

[¶8.] M.D.D. also argues that the circuit court did not consider the "serious hardship or injustice" that restitution payments would cause her. *See* SDCL 26-8B-6(4), *supra* note 3 (authorizing restitution in juvenile cases if payment can be enforced without serious hardship or injustice to the child). In this case, the circuit court determined the amount of restitution to be paid, but made no findings regarding possible hardship or injustice to the child. M.D.D. claims that a circuit court must make a finding on hardship in every case, and that the court's failure to make such a finding – which M.D.D. claims was a disputed material issue – requires reversal. *See* St. Cloud v. Leapley, 521 NW2d 118, 125 (SD 1994) (stating:"A failure to make a finding on a disputed material issue requires a

reversal of a judgment." (quoting Bell v. Midland Nat'l Life Ins. Co., 78 SD 349, 359, 102 NW2d 322, 327 (1960) (citing Craigo v. Craigo, 22 SD 417, 423, 118 NW 712 (1908))).

[¶9.]    Our review of the record, however, reflects that hardship was never an issue, let alone a disputed issue that required findings of fact in the restitution proceedings.  As other courts have commented, if it is the juvenile's contention that he or she cannot afford to pay restitution, the juvenile bears the initial burden of at least raising the issue.  *See* State v. Fellers, 37 WashApp 613, 620, 683 P2d 209, 214-15 (1984) (observing that *"[w]hen requested*, the juvenile has a right to be heard on the issue of whether he has the ability to pay") (emphasis added).

[¶10.]    At the restitution hearing, M.D.D. did not argue that potential hardship was required to be considered in every case or that restitution would constitute a hardship in this case.  On the contrary, in its opening statement, the State indicated that the "sole issue" was whether the circuit court could legally order M.D.D. to repay Medicaid under the previously discussed restitution statutes, and M.D.D. agreed.  Further, M.D.D.'s only argument involved the applicability of the criminal statutes in juvenile proceedings.  Counsel's argument was that:

> [SDCL 23A-28-2] applies to adult convictions. . . . It does not refer to adjudications for juvenile delinquencies, and therefore, I believe that statute does not apply in this case.  And I believe that it doesn't apply for a good reason in that a juvenile matter, such a far reaching restitution order . . . doesn't meet the same ends of justice in that the juvenile isn't going to have the same earning ability as an adult, and it is going to become more of a burden upon the family than it is upon punishment or making someone whole as it would in the case of an adult.  The entire Title . . . 26 and the subchapters referring to juveniles, subchapter 7(a) and then 8(a), 8(b) and 8 (c) [sic] don't even mention the word restitution.

Thus, M.D.D. only mentioned that generally, juveniles do not have the same earning ability as adults.

[¶11.] This general reference to earning ability, made in the context of an argument on a different legal issue, did not bring the legal or factual arguments M.D.D. now asserts on appeal to the circuit court's attention. Considering the stipulated, limited nature of the restitution hearing and the failure to raise a suggestion of actual hardship or injustice in this case, M.D.D. has not preserved her hardship arguments for appeal.[4]

> Ordinarily an issue not raised before the trial court will not be reviewed at the appellate level. The trial court must be given an opportunity to correct any claimed error before we will review it on appeal. To preserve issues for appellate review litigants must make known to trial courts the actions they seek to achieve or object to the actions of the court, giving their reasons. Failing to raise an issue, thereby allowing the circuit court an opportunity to correct the claimed error, results in waiver of the issue.

State v. Gard, 2007 SD 117, ¶15, 742 NW2d 257, 261 (citations omitted). *See also* Fed. Land Bank of Omaha v. Jensen, 415 NW2d 155, 159 (SD 1987) ("Not having been presented to the trial court for ruling, it simply is not preserved for appeal[.]").

[¶12.] Affirmed.

---

4. We acknowledge that M.D.D. raised the *factual* issue of hardship in her proposed findings of fact and conclusions of law. At that point in the proceedings, however, the time for presenting evidence of hardship had passed and the circuit court had no factual basis upon which it could have entered a finding of fact regarding hardship. *See e.g.,* Rich v. Olah, 274 SW3d 878, 884 (TxCtApp 2008) ("When a party attacks the factual sufficiency of an adverse finding, it must demonstrate the adverse finding is against the great weight and preponderance of the evidence."). We also note that at oral argument, counsel for M.D.D. conceded that he never used the word "hardship" at the restitution hearing.

#25124

[¶13.]    GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.